**CENTRAL MOTOR CO. et al. v. ROBERSON.**

No. 14258.

Court of Civil Appeals of Texas. Fort Worth.

July 11, 1941.

Rehearing Denied Sept. 26, 1941.

See, also, Tex.Civ.App. 139 S.W.2d 287.

John B. McNamara, of Waco, and Cantey, Hanger, McMahon, McKnight & Johnson and J. A. Gooch, all of Fort Worth, for appellants.

H. S. Lattimore, of Fort Worth, for appellee.

BROWN, Justice.

Appellee, R. B. Roberson, purchased an automobile from appellant, Central Motor Co., a corporation, and gave a chattel mortgage to secure the portion of the purchase price that was unpaid.

Appellee was living in the City of Waco, where the appellant has its domicile, and having lost the employment that necessitated his living in said City, took the automobile and left said City.

Being in arrears on his monthly payments, the appellant endeavored to locate appellee and was unsuccessful.

Appellee was reared in the City of Fort Worth, in Tarrant County, where his mother lived, and he went there.

M. Burton, one of the appellants, was the chief of detectives in the police force of the City of Waco, and one of the officers of appellant corporation called officer Burton to its place of business and told such officer the facts, as he understood them, of the situation as to Roberson's purchase of the auto, the condition of his account and the fact that he had left Waco with the auto and had not been located by said Company.

It is undisputed that the corporation's officer asked Burton whether or not he could locate Roberson and the auto.

The undisputed facts disclose that Burton undertook to locate Roberson and the auto.

The persons who discussed the matter in behalf of the corporation all deny that any one of them instructed Burton to prefer criminal charges against Roberson, or to arrest him. Burton testified that none of them instructed him to prefer any such charge or to arrest Roberson. In detailing the conversation, or conversations, had with the officers of such corporation, Burton testifies, at one time, that he told them he was going to file a complaint against

Roberson, and that he told them he had no authority to take possession of the auto but that he could make a criminal charge against Roberson.

After Burton had concluded the conversation with the corporation's officers, he told the constable of the Justice of the Peace precinct in which the City of Waco is situated to make a complaint against Roberson for embezzlement and to have a warrant issued for his arrest. After such communication with the constable, Burton wrote to the Chief of Police of Fort Worth on February 9, 1939, as follows:

"Re: 1934 Chrysler Sedan, License No. 847-138, Cream color, Motor No. CA16422.

"Please arrest one R. B. Roberson, white man, about 28 years old who is supposed to live at 1201 E. Weatherford St., Fort Worth, Texas, with his mother, Mrs. F. M. Roberson, Sr.

"This man obtained possession of the above described automobile thru fraud and a warrant has been issued for his arrest. If you are able to apprehend Roberson, please take possession of the above automobile and hold for this department.

"Roberson is supposed to be a traveling salesman and travels mostly over north and east Texas.

"We shall appreciate your efforts to cause the arrest of this party and wish to assure you of our willingness to serve you at all times.

"Respectfully, Red Burton, Detective Captain, Waco Police Department."

The police force of Fort Worth arrested Roberson on February 26, 1939, and placed him in the city jail and notified the police department of the City of Waco of these facts.

Appellant Burton came to Fort Worth the following day and carried Roberson to Waco.

Before Burton came to Fort Worth, he advised Central Motor Co. that he was going to get Roberson and that the auto was in Fort Worth and asked the Motor Company whether or not it cared to send a man to Fort Worth to get the automobile, if Roberson would permit its being taken. They advised in the affirmative and sent a colored man up with Burton to get the auto.

The evidence does not disclose that Roberson made any objection to the auto being taken to Waco by the colored man. He acquiesced in this being done and upon his arrival in Waco, Roberson executed a bill of sale to the Motor Company, transferring all title to it in consideration of the cancellation of the debt he was owing it. He said that his lawyer told him that if he would execute the bill of sale the case against him would be dismissed. This was done.

Roberson brings the instant suit against Central Motor Co. and Burton to recover actual and exemplary damages against them, jointly and severally, and alleges, among other things, that he was arrested when there was no warrant issued for his arrest and placed in the hands of the officers who arrested him, or in Burton's hands, and that Burton was the agent of Central Motor Co. and acting within the scope of his authority, when he did the acts complained about.

The cause was tried to a jury and both defendants requested peremptory charges which were refused.

On special issues submitted to the jury, they answered:

(1) That when Burton wrote the letter to the police department of Fort Worth there was on file in the office of the Justice of the Peace in McLennan County, Texas, a complaint charging Roberson with embezzlement over $50.

(2) That a warrant was not issued out of said court for Roberson's arrest.

(3) Not answered.

(4) There is no issue 4.

(5) "Do you find from a preponderance of the evidence that at the time defendant Burton wrote the letter mentioned in Special Issue No. 1 above to the Chief of Police at Fort Worth that he was acting within the scope of his authority (as that term is defined to you below) from the Central Motor Co.?

"By the term 'scope of authority' as used in the above question is meant the doing of a thing in connection with and as a part of the work such person was expressly authorized to perform under the direction of J. N. Mitchell or Bud Mitchell, or either of them, or which was reasonably necessary to effectuate the act expressly authorized or was reasonably implied from the purposes and nature of such express authority.

"Answer: Yes."

(6) There is no issue No. 6.

(7) That when Roberson was arrested and imprisoned no warrant had issued out of said J. P. Court.

(8) That Roberson sustained injury as a direct result of his arrest.

(9) The damages are found in the sum of $4,000.

(10) That Burton acted with malice.

(11) "Do you find from a preponderance of the evidence that at the time the president J. N. Mitchell or the secretary-treasurer Bud Mitchell, or either of them, of the Central Motor Company, requested the assistance of the defendant Burton in connection with the matter in controversy herein, that the said J. N. Mitchell or Bud Mitchell acted with malice as that term is defined for you in issue No. 10 above?

"Answer: Yes."

(12) That exemplary damages should be assessed against the defendants.

(13) $25 damages assessed against the Motor Company and $50 against Burton.

On the verdict the trial court rendered judgment against the defendants; hence the appeal by both defendants.

■ If defendant Central Motor Co. is to be held in damages for the acts of Burton, under the facts in this case, then every citizen who thinks he has been wronged by any person, and who details the facts and circumstances to an officer of the law, can be held in damages, if such officer makes, or causes to be made, a criminal charge against such person charged with wrongdoing, should the acts of the officer give rise to a suit for damages.

We believe that to so hold would set a dangerous precedent and result in the failure to have the criminal laws of the land enforced, because of fear of being sued for damages for malicious prosecution or unlawful arrest.

We believe that the case of Meyer et ux. v. Monnig Dry Goods Co. et al., Tex.Civ. App., 189 S.W. 80, 82, in which a writ of error was refused by the Supreme Court, comes more nearly within the facts of the instant suit than any we have studied.

Mrs. Meyer was charged with the theft of a bit of jewelry from the above named company. One O. E. Wandry was the manager of the mercantile establishment.

The opinion states:

" * * * the evidence shows conclusively that the arrest and prosecution were solely upon the volition of the policeman and other public officers, and not upon request or direction of any of the defendants.

"Defendant Wandry, as it was his legal right and duty to do, reported the theft to the policeman and pointed out to him Mrs. Meyer as the guilty person. He did nothing more than that. Even if he had requested the arrest, it could not be presumed that he thereby intended an unlawful. arrest. * * * Hence, even though it should be said that in arresting Mrs. Meyer the officer did not follow the preliminary legal steps necessary to make the arrest strictly lawful, the evidence conclusively shows that the defendants are not liable for any damages resulting therefrom, or from the incarceration which followed the arrest."

The case quoted from has been followed in Price et al. v. Lovejoy, Tex.Civ.App., 88 S.W.2d 785, Hamilton v. California Co., Tex.Civ.App., 103 S.W.2d 200, writ dismissed, and Schnaufer v. Price et al., Tex. Civ.App., 124 S.W.2d 940, writ refused.

When the officers of the corporation told officer Burton what they believed to be the facts in the matter of its relation to Roberson and of Roberson's acts, and asked the officer what could be done, or even requested the officer's assistance in locating the auto and Roberson, even if a representative of the corporation had told the officer to "pick up Roberson" (as counsel for Roberson testified that Burton told him the corporation so said to him), we feel that we cannot hold that the officer of the corporation knew that Burton would make an unlawful arrest, or that Burton intended to do so. There is nothing in this record to indicate that any officer of the corporation had any such knowledge, and none that it ratified any of Burton's acts.

In our opinion, when the representative of the defendant corporation put what it believed to be the facts before the said officer, such representative had the right, in the absence of knowledge to the contrary, to believe that the officer would act only in a lawful manner in dealing with Roberson.

Our holding in the case at bar is not, in our opinion, in conflict with the holding of the Supreme Court in Rucker v. Barker, 108 Tex. 280, 192 S.W. 528, or Galveston, H. & S. A. Ry. Co. v. Harden, Tex. Civ.App., 236 S.W. 146, cited by Roberson.

In each of the cases the offending party was an employee of the person sought. to be held in damages and the facts in such

cases are not similar to those in the instant suit. ·

We are of opinion that the judgment as against Central Motor Company should be reversed and here rendered for it.

If we should be mistaken in the holding just announced, the judgment as to said Motor Company should be reversed because of the errors we now note.

■ The submission of Special Issue No. 5, over the objection that it is on the weight of the evidence and assumes that Burton was the agent of the Motor Company when he did the acts complained of, was error.

■ Agency must be both pleaded and proved, when the principal is sought to be held in damages for his agent's acts.

We do not believe that the evidence before us is sufficient to raise the issue of agency as between the Motor Company and Burton, but if it should be held to be sufficient, such issue was expressly denied by the Motor Company and by Burton.

■ If there were any facts adduced which have such probative· force as that they raise the issue of agency, it must be admitted that Burton could not have been anything more than a special agent.

A police ·officer, employed by a municipality, could not be a general agent of a private person, natural or corporate, and be at the same time a public peace officer.

It was the special agency, the special employment of the constable by Rucker, that determined Rucker's liability, under the facts found in Rucker v. Barker, supra. The fact that the person employed was a constable played no decisive part in the disposition of the case.

There is neither hint nor suggestion that the Motor Company employed officer Burton.

When such company called upon Burton as a public officer and laid before him what it believed the facts to be, and asked the officer for assistance, in the circumstances, if it could be said that the Motor Company then clothed the officer with authority to proceed against Roberson, common sense tells us that the officer could have and did have no more authority from the Motor Company than that with which he was vested as an officer of the law, unless the Motor Company gave him express authority to do a certain thing.

We do not find evidence tending to show that the Motor Company directed, or authorized, the officer to do an unlawful, or wrongful, act. Asking the officer to assist in locating Roberson and the auto cannot, in the absence of any other evidence of probative value, tend to prove such issue of fact, and when we consider the testimony of counsel for the plaintiff to the effect that the officer, after the arrest was made and not in the presence of any representative of the Motor Company, told counsel that the Motor Company told him "to pick up Roberson", we cannot, in justice, assume that the Motor Company either directed or authorized the officer to make an unlawful arrest, or to cause criminal charges to be filed against Roberson not founded on probable cause.

■ Other than the testimony of the attorney for plaintiff to the effect that, long after the act complained of was committed, Burton told him that the Motor Company had him "pick up" plaintiff, there is no evidence that any officer of such corporation directed or authorized the arrest.

This evidence has no probative value and is incompetent and inadmissible to prove agency even though it may have been admitted without objection.

Mr. Chief Justice Hickman, in Sinclair Refining Co. v. Womack, Tex.Civ.App., 66 S.W.2d 402, discusses this rule and cites outstanding authorities in support of the opinion.

Mr. Justice Sharp, in West Texas Produce Co. v. Wilson, 120 Tex. 35, 34 S.W. 2d 827, specifically holds that the statements of officers of a corporation, the day after the occurrence that gave rise to the suit, are not admissible to establish agency.

The charge complained of assumes that the Motor Company made Burton its agent and clothed him with some express authority to act for it,

The issue of agency was vigorously disputed.

The finding of such issue in favor of the plaintiff is indispensable to his right of recovery. After asking the jury to find whether or not, at the time he wrote the letter to the police department of Fort Worth to arrest Roberson, Burton was acting within the scope of the authority that he received from the Motor Company, the trial court gives the jury this definition of scope of authority: "By the term 'scope

of authority as used in the above question, is meant the doing of a thing in connection with and as a part of the work such person was expressly authorized to perform under the direction of J. N. Mitchell or Bud Mitchell, or either of them, or which was reasonably necessary to effectuate the act expressly authorized or was reasonably implied from the purposes and nature of such express authority."

Thus it affirmatively appears that the definition, which is a part of the issue, assumes that J. N. Mitchell or Bud Mitchell expressly authorized Burton to act for the Motor Company—that he was directed to do the act for the Motor Company, of which complaint is made.

This definition then tells the jury that the writing of the letter by Burton done in connection with and as a part of the work that the officers, or officer, of the Motor Company expressly authorized Burton to do, was an act within the scope of the authority thus given Burton.

The definition then goes further and tells the jury that if the act of Burton, of which complaint is made, was reasonably necessary to effectuate (that is to say, *accomplish*) the act that was expressly authorized by the Motor Company's officer, or officers, the act would be one done within the scope of the authority that was given to Burton.

We pause here to say that even if the record showed that the Motor Company authorized Burton to make a criminal charge against Roberson, it could hardly be said that it was reasonably necessary for Burton to arrest, or cause any other officer to arrest, Roberson when no warrant for his arrest had been issued in order to accomplish the act that was authorized.

The definition then goes further and tells the jury that if Burton's act, of which complaint is made, could be reasonably implied from the purposes and nature of the express authority that was given by the officer, or officers, of the Motor Company to Burton, such act would be within the scope of the authority that was given Burton.

█ We understand that the implied authority of an agent includes such acts, and only such acts, as are incident and necessary to the exercise of the authority expressly granted. To put it another way—

an agent's implied authority is that only which is proper, usual and necessary to the exercise of the authority expressly granted. First National Bank v. Schirmer, 134 Minn. 387, 159 N.W. 800; Coulson v. Stevens, 122 Miss. 797, 85 So. 83.

We pause to say that even if the Motor Company had authorized Burton to prefer, or cause to be preferred, a criminal charge against Roberson, we do not see how it could be reasonably implied from the purposes and nature of such express authority that Burton would arrest, or cause any officer to arrest, Roberson when no warrant had been issued for his arrest.

Because the charge assumes a controverted fact, the finding of which is necessary for a recovery by plaintiff, and the burden of establishing such fact being on the plaintiff, the charge is erroneous. Speer's Law of Special Issues, 1932 Edition, para. 195, p. 254, and cases cited, and 1939 Supplement, para. 195, p. 136, and cases cited.

The Court of Civil Appeals for the Texarkana District, in a well considered opinion by Mr. Chief Justice Johnson, in the case of Pittsburg Pipe & Supply Co. v. Federal Machine & Supply Co., Tex.Civ. App., 107 S.W.2d 637, discusses the rule that where one seeks to hold an alleged principal for the acts of his agent and estoppel is not pleaded, it is incumbent upon the complaining party to prove that the person from whose acts the cause of action arises was in fact the agent of the alleged principal and that he had actual authority, either express or implied, as distinguishable from apparent or ostensible authority, to do the act forming the basis of the suit. The opinion cites Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463.

There is no plea of estoppel in the case before us. The plaintiff seeks to hold the alleged principal on the allegation of actual authority.

As in the instant suit there was no finding in the Pittsburg Pipe & Supply Co. case, supra, of the alleged agent's authority, and none requested by the plaintiff, and the opinion concludes that a judgment could not be sustained, under these circumstances, unless the evidence on the issue of the agent's authority be such as to establish that fact as a matter of law, and that unless the evidence does establish the

agent's authority as a matter of law, the plaintiff must be deemed to have waived the issue.

The plaintiff waived the issue in the instant case and acquiesced in the trial court giving a charge that assumed the alleged principal gave the alleged agent express authority to do the act that gives rise to the suit.

■ We believe that defendant Motor Company was entitled to the submission of a specially requested issue calling upon the jury to find whether or not any of the representatives of said corporation requested Burton to arrest Roberson.

Such issue was refused by the trial court. Evidently the plaintiff believed that the establishment of such fact was material to his right to recover, because counsel for plaintiff testified that Burton told him, after the arrest was made, that the Motor Company had him "pick up Roberson", and plaintiff's counsel testified to such conversation for the purpose of establishing the fact that the Motor Company directed Burton to arrest Roberson and for the further purpose of impeaching Burton, after interrogating him on the question of whether he made such statement to counsel and Burton had denied making such statement.

■ We believe that the defendant Motor Company was entitled to a charge requiring the jury to find whether or not the officials of such Company made a full, complete and fair disclosure of all of the facts in their possession concerning Roberson, his dealings with the Company and his conduct.

Whatever facts and statements were given and made to the officer Burton were made to a peace officer, and if the Motor Company is to be held in damages because such officer acted upon the information given, it appears to us that the requested charge was one necessary to the Motor Company's defense.

It is not sufficient to say that the plaintiff is seeking damages only for an unlawful arrest; his pleadings and the evidence he adduced and the manner in which the case was tried all disclose that he is charging both malicious prosecution and unlawful arrest.

If the plaintiff contends that he stood in the trial court only on the issue of unlawful arrest and that he so stands here, it appears to us that this contention is to admit that the filing of the charges was a proper act, and that the only complaint he has to make is that he was not lawfully arrested because no warrant had ever issued for his arrest.

■ It is our opinion that no issue of malice on the part of the Motor Company was raised by the evidence. We have read it in its entirety and the evidence is insufficient to raise the issue.

Appellant Burton presents only three propositions in the brief: (1) That he was entitled to a peremptory instruction, (2) that the court erred in giving the charge relating to malice, and (3) that he was entitled to his requested charge on the issue of good faith in causing a criminal charge to be made against Roberson.

■ 1. Burton was not entitled to a peremptory instruction, under the evidence adduced.

■ 2. The issue of malice on the part of Burton was properly given under the facts and pleadings. Burton has been a peace officer for a long term of years, and he must be held to have knowledge of how, when and under what circumstances an arrest may be lawful, or unlawful.

■ 3. No issue was submitted on the question of malicious prosecution, and the issue requested by Burton goes only to such contention.

We pretermit discussing all other issues and questions presented in the briefs.

For the reasons stated the judgment against Central Motor Company is reversed and judgment is here rendered for such appellant. The judgment against Burton is affirmed.